## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| v. | ) | **Crim. No. 15-23 (BAH)** |
|  | ) |  |
| DAVID FLOWERS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

### DEFENDANT'S OMNIBUS MOTIONS *IN LIMINE*

Defendant David Flowers, by and through undersigned counsel, respectfully submits the following motions in limine seeking to preclude:  (1) evidence relating to the Ashley Stewart robbery; (2) expert testimony by Special Agent Richard Fennern regarding the determination of a cell phone's location; and (3) references to the term, "Early Bird Bandit."

**I.      The Ashley Stewart Bag Should Be Excluded Under the Fifth Amendment and Rule 403**

The defense believes that the government intends to introduce a photograph of an Ashley Stewart shopping bag found pursuant to a search of the residence on 57th Street.  *See* Gov't Ex. 3C-3D.  However, the government lost crucial evidence the defense could have used to show that the bag was not obtained during the Ashley Stewart robbery.  According to investigative files, the original surveillance video received by the government from Ashley Stewart showed the suspect "entering the business," going "behind the counter," and "exiting through a rear door." Att. A.  That video was provided to Kevin Palmer, an MPD employee, who then made a short excerpt in order to post the video on MPD's YouTube channel.  Att. B.  MPD subsequently lost the original video, and Ashley Stewart went out of business.  The extent of the remaining video

is essentially what is preserved in the stills in Gov't Exs. 3A, and 3B—a brief glance of the suspect as he enters the store.

Although there is no evidence that the government acted in bad faith—which would require dismissal of the Ashley Stewart counts—it remains the case that its own actions have deprived the defense of crucial evidence showing that the robbery suspect left the store without any Ashley Stewart bag.  Under basic principles of fairness underlying the Fifth Amendment's due process guarantee, Mr. Flowers should not be required to answer such evidence when the government has effectively tied his hands behind his back.

In addition, the government's case is built almost entirely on comparisons of minute features of clothing used by the suspects in multiple robberies.  But its own inability to preserve precious video footage cost Mr. Flowers the chance to compare the Ashley Stewart suspect's clothing to those the government claims are his.  Instead, all that is preserved are the brief frames of Gov't Exs. 3A and 3B, which are very minimally probative in that regard.  Given the minimal evidence linking Mr. Flowers to the robbery of the Ashley Stewart store, the prejudicial effect of the Ashley Stewart bag is magnified, and the fact that Mr. Flowers cannot show that the robbery suspect did not leave with a bag becomes all the more debilitating.  Since nothing ties the Ashley Stewart bag to the robbery, and since Mr. Flowers is unable to show that it was not obtained in the robbery, the defense respectfully submits that introduction of the bag would be more prejudicial than probative.

## II.	Testimony Regarding the Location of Cell Phones Should Be Excluded

Federal Rule of Evidence 702 authorizes expert testimony if (a) the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) *the testimony is the product of reliable principles and*

*methods*; and (d) the expert has reliably applied the principles and methods to the facts of the

case."   *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) ("[A]ny step that

renders the analysis unreliable . . . renders the expert's testimony inadmissible.  This is true

whether the step completely changes a reliable methodology or merely misapplies that

methodology.").  The proponent of expert testimony has the burden of establishing that the

pertinent admissibility requirements are met by a preponderance of the evidence.  *Bourjaily v.*

*United States*, 483 U.S. 171 (1987).

The government has provided notice that it intends to call Special Agent Richard Fennern

at trial to testify regarding the analysis of historical cellular phone records for the purpose of

determining the approximate location from which a phone was used at a particular time or range

of times.  Although many courts initially allowed such testimony, more recent decisions have

pointed out the analytical gap between the location of a cell phone and the location of the tower

to which it connects.  *See United States v. Hill*, --- F.3d ----, 2016 WL 1085115, *8 (7th Cir.

Mar. 21, 2016) ("The admission of historical cell-site evidence that overpromises on the

technique's precision—or fails to account adequately for its potential flaws—may well be an

abuse of discretion."); *see also United States v. Reynolds*, 626 F. App'x 610, 616 (6th Cir. 2015)

(stating that law enforcement agent's claim that cell tower location has been "successfully

employed '1000 times'….appears to be precisely the sort of '*ipse dixit* of the expert' testimony

that should raise a gatekeeper's suspicion") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146

(1997)).  Moreover, courts that have admitted such testimony have "relied primarily on other

*federal courts*' acceptance of historical cell-site tracking to conclude that the technique is

reliable," despite the fact that "judges are not scientists and do not have the scientific training

that can facilitate the making of scientific decisions."  *Id*. at 56 (quotation omitted) (emphasis in

original) (citing *United States v. Machado–Erazo*, 950 F.Supp.2d 49, 57 (2013); *United States v. Schaffer*, 439 Fed. App'x. 344, 346 (5th Cir. 2011); *United States v. Davis*, 2013 WL 2156659, at *6 (S.D.Fla. May 17, 2013); *United States v. Fama*, 2012 WL 6102700 (E.D.N.Y. Dec. 10, 2012).

Although it is certainly true that the tower that a cell phone connects with bears some relationship to distance, in an urban environment such as Washington, D.C., countless towers are within a reasonable range of a phone at any given  moment, and numerous factors other than location affect which tower a phone connects to.  Thus, to reliably locate a cell phone in an urban environment based on which tower it connected to, one would have to know innumerable details about the specific towers and conditions in the area.  While Special Agent Fennern could expressly testify about "the technique's potential pitfalls" and the "relative imprecision of the information he gleaned," *Hill*, 2016 WL 1085115 at *8 (admission of cell tower testimony was not an abuse of discretion in light of express testimony about its limitations), that both undermines the probability of such testimony, and would make far less of an impact than the visual "maps" the government created confusingly showing towers connected by certain cell phones with the obvious intention that the jury associate those locations with cell phones themselves.  For these reasons, the defense respectfully submits that such testimony is both unreliable under Fed. R. Evid. 702 and more prejudicial than probative under Fed. R. Evid. 403.

III.   **The Government Should Not Refer to the "Early Bird Bandit"**

The central issues in this trial are (1) whether the suspects in the eight charged robberies and three uncharged robberies are one person, and (2) whether that person is Mr. Flowers.  Given the nature of the human mind to latch onto concepts and then to perceive future experiences through those concepts, it would be highly prejudicial for the government to attempt to argue

those essential jury determinations through the mouths of its witnesses by use of the colorful

term, "Early Bird Bandit."


    April 8, 2016                               Respectfully submitted,


                                        /s/  Matthew J. Peed

                                       Matthew J. Peed (D.C. Bar No. 503328)

                                       CLINTON BROOK & PEED

                                       1455 Pennsylvania Ave. N.W., Suite 400

                                       Washington, DC 20004

                                       (202) 618-1628 (tel)

                                       (202) 204-6320 (fax)