UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**DAVID FLOWERS** | **CRIMINAL NO. 15-CR-00023 (BAH)** |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The government respectfully requests that the Court accept the Rule 11(c)(1)(C) sentencing structure proposed by the parties, which would require a total sentence of 120 months of incarceration, followed by five years of supervised release. In support thereof, the government states the following:

### SUMMARY

On February 7, 2014, a mere three days after being released in a pending case in Prince George's County, the defendant committed a string of armed robberies in Washington, DC, and Prince George's County. In nearly all of the robberies, the defendant's method of operation was similar – he targeted small retail businesses when they were at their most vulnerable, right before or after they opened or closed. The defendant would then enter the store wearing a mask, would brandish a firearm (or imitation thereof), and would often command the employees to lead him to the store's safe before taking the store's money (or attempting to do so) and exiting. Though frightening and emotionally traumatizing, these robberies did not result in physical harm to the stores' employees.

A joint robbery task force comprised of agents from the Federal Bureau of Investigation's Washington and Baltimore Field Offices, along with detectives from the Washington, DC, Metropolitan Police Department and the Prince George's County Police Department, was established to find the defendant and end his robbery spree. Through their efforts, the defendant was ultimately identified and apprehended.

In pleading guilty, the defendant has attempted to resolve federal charges in both Washington, D.C. and Maryland. In addition to agreeing to plead guilty to a two-count Information transferred from the District of Maryland under Rule 20, the defendant also acknowledged responsibility for an additional nine occasions in Maryland when he committed Hobbs Act violations.

The agreed-upon sentence of 120 months of incarceration exceeds the federal sentencing guidelines range of 84 to 105 months that applies to a conviction for five or more Hobbs Act robberies. In agreeing to this proposed sentence, the parties recognized that the number of additional alleged robberies in Maryland would be cause for the defendant to face a separate and additional prosecution by the United States Attorney's Office for the District of Maryland, and could also provide cause for the government to argue for an upward departure under these circumstances. The proposed sentence of 120 months of incarceration also reflects a portion of the additional exposure he could face were he to be convicted under the local D.C. Code offenses charged in the D.C. Indictment.[1]

---

[1] Indeed, were the government to prevail on all of the local D.C. Code charges at trial, for the local charges the defendant would be facing an estimated Superior Court Voluntary Sentencing Guideline Range of at least 588 months of incarceration. The Superseding Indictment contains six counts of Armed Robbery, eight counts of Possession of a Firearm During a Crime of Violence ("PFCOV"), and two counts of Attempt to Commit Robbery While Armed, in violation of 22 D.C. Code §§ 2801, 2802, and 4502. (All of these include as an element a "firearm or imitation thereof.") Given the revised information about the defendant's 1988 conviction, as

At the same time, the proposed sentence also reflects the parties' recognition of their respective litigation risks, the primarily circumstantial nature of the evidence against the defendant, and the fact that the global plea here resolves numerous and as-yet-uncharged offenses before a separate U.S. Attorney's Office and a separate court, thereby saving law enforcement and the judiciary the expenditure of even more resources.[2] When considering all of these factors, the proposed sentence is a just and fair resolution of this particular case and under these particular circumstances.

## FACTUAL BACKGROUND

discussed below, the government now estimates that under the *Superior Court Voluntary Sentencing Guidelines Manual (2015 ed.)* ("D.C. Sentencing Guidelines"), the defendant falls into Criminal Category E. The D.C. Sentencing Guidelines suggest 84+ months of incarceration for each of the six Armed Robbery counts; 84+ months for each of the six PFCOV counts; and 42+ months of incarceration for each of the two Attempted Armed Robbery counts. The D.C. Sentencing Guidelines also suggest that each of the sentences for the robberies and attempted robberies should be consecutive to one another, as each involves a separate event with separate victims, resulting in a suggested guideline range of 588 months (49 years) [six robberies x 84 months plus two attempted robberies x 42 months = 588 months]. Under the D.C. Sentencing Guidelines, the PFCOV terms could be imposed either concurrently or consecutively, at the discretion of the Court, potentially resulting in an even higher sentence. *See Superior Court Voluntary Sentencing Guidelines Manual (2015 ed.)*, Section 6.1. (The 2015 edition can be found at http://scdc.dc.gov/sites/default/files/dc/sites/scdc/publication/attachments/2015_Voluntary_Sentencing_Guidelines_Manual.pdf ).

To be sure, local statutory law does not require the imposition of consecutive sentences for each robbery, and the Superior Court Voluntary Sentencing Guidelines are themselves voluntary. The Superior Court Voluntary Sentencing Guidelines also contain departure principles permitting deviation from the consecutive and concurrent sentencing rules of Section 6, in order to arrive at a voluntarily-guideline-compliant sentence, if adhering to them would result in a "manifest injustice" in the view of the sentencing court. *See* §§ 5.2.2(10) and 5.2.3(9) of the *Superior Court Voluntary Sentencing Guidelines Manual (2015 ed.)*. These are in addition to other departure principles found in Section 5.2.

---

[2] Law enforcement identified the defendant as a possible suspect in a number of other robberies in Prince George's County that are listed on the bottom half of page 3 of the plea agreement. Undersigned government counsel understands that the strength of the evidence regarding the defendant's involvement in those robberies in Prince George's County varied. As part of the plea agreement, the United States Attorney's Office for the District of Maryland has agreed to forego prosecution as specified in the Plea Agreement.

1.      The details of the defendant's conduct are in the statement of offense, which states in relevant part:

As indicated in the Superseding Indictment of March 29, 2016, the defendant has been charged with possessing a "firearm or imitation thereof" during certain robberies and attempted robberies.  While the instrument appeared real to the victims, no firearm has yet been recovered with respect to this matter, and a black pellet gun was recovered at the defendant's home.  For purposes of the plea, the parties are willing to agree and stipulate that, at the very least, the instrument that FLOWERS brandished as described below was at least an "imitation firearm."

(COUNT 6, INTERFERENCE WITH INTERSTATE COMMERCE BY ROBBERY) On October 13, 2014, at approximately 9:00 am, FLOWERS entered the Murry's Food store located at 3932 Minnesota Avenue N.E., Washington, D.C.  Once inside the store, FLOWERS brandished a silver and black firearm or imitation thereof at two employees and forced them to enter an office inside the store.  Once inside the office, FLOWERS continued to brandish the weapon and asked one of the employees to open a safe.  The employee complied and FLOWERS removed, without right and with intent to steal, approximately $900 of U.S. Currency and placed it in a white plastic bag.  FLOWERS then left the office with the money and exited the store through its front doors.  The robbery of this store affected interstate commerce given the interstate nature of the commercial products sold therein.

(COUNT 9, INTERFERENCE WITH INTERSTATE COMMERCE BY ROBBERY) On November 15, 2014, at approximately 8:40 am, FLOWERS entered the Murry's Food store located at 4025 South Capitol Street S.W., Washington, D.C.  An employee attempted to turn FLOWERS away at the front door, as the store was not open yet.  FLOWERS then brandished a silver and black firearm or imitation thereof, and ordered the employee to go inside an office

near the front door of the store. Once inside the office, FLOWERS ordered another employee already inside the office to open a safe. The employee complied and FLOWERS removed, without right and with intent to steal, an undetermined amount of U.S. Currency from inside the safe and placed that currency in a black backpack. FLOWERS then exited the store with the money. The robbery of this store affected interstate commerce given the interstate nature of the commercial products sold therein.

(COUNTS 12 and 13, ARMED ROBBERY AND PFCOV)[3] On December 10, 2014, at approximately 10:00 am, FLOWERS entered the Rainbow clothing store located at 2853 Alabama Avenue S.E., Washington, D.C. When FLOWERS entered the store, he brandished a black firearm or imitation thereof at two employees and escorted them to cash registers located near the rear of the store. FLOWERS then instructed one of the employees to open a safe located underneath the registers. The employee complied and FLOWERS removed, without right and with intent to steal, $1,706.95 in U.S. Currency and placed it inside of a white plastic bag. FLOWERS then exited the store with the money. The robbery of this store affected interstate commerce given the interstate nature of the commercial products sold therein. During the commission of this robbery, FLOWERS possessed a black firearm or imitation thereof, voluntarily and on purpose, and not by mistake or accident.

(COUNT ONE OF THE MARYLAND INFORMATION TRANSFERRED UNDER RULE 20, INTERFERENCE WITH INTERSTATE COMMERCY BY ROBBERY) On December 26, 2014, at approximately 9:50 p.m., FLOWERS entered the CVS store located at

---

[3] The "header" for Paragraph 4 of the Statement of Offense erroneously indicates "Count 3." The header here has been corrected to reflect that the substance in fact tracks Counts 12 and 13 as indicated in the Plea Agreement.

4840 Marlboro Pike, Capitol Heights, Maryland. When FLOWERS entered the store, he approached an employee and brandished a silver and black firearm or imitation thereof. FLOWERS then escorted the employee to an office inside the store and instructed him to open a safe. The employee complied and FLOWERS removed, without right and with intent to steal, $9,000 in U.S. Currency and placed it inside of a white plastic bag. FLOWERS then exited the store with the money. The robbery of this store affected interstate commerce given the interstate nature of the commercial products sold therein.

(COUNT 17, ATTEMPTED INTERFERENCE WITH INTERSTATE COMMERCE BY ROBBERY) On January 18, 2015, at approximately 8:04 p.m., FLOWERS entered the CVS store located at 2837 Alabama Avenue, S.E., Washington, D.C., and walked through the aisles before standing in aisle #7. An employee approached him, and FLOWERS brandished a silver and black firearm or imitation thereof and demanded that the employee "open the door" (referring to an internal office area at the end of the aisle). The employee refused and walked away, and FLOWERS then exited the store. The attempted robbery of this store affected interstate commerce given the interstate nature of the commercial products sold therein.

(COUNT TWO OF MARYLAND INFORMATION TRANSFERRED UNDER RULE 20, ATTEMPTED INTERFERENCE WITH INTERSTATE COMMERCE BY ROBBERY) On February 5, 2015, at approximately 8:50 am, FLOWERS entered the KFC restaurant, located at 6510 Coventry Way, Clinton, Maryland. FLOWERS entered the restaurant through a back door located near the drive-through window and encountered an employee in an office. FLOWERS brandished a silver and black firearm or imitation thereof and demanded money. When the employee informed him that the employee could not access the money at the location,

FLOWERS fled out the back door on foot. The attempted robbery of this restaurant affected interstate commerce given the interstate nature of the commercial products sold therein.

(COUNT 20, ATTEMPTED INTERFERENCE WITH INTERSTATE COMMERCE BY ROBBERY) At approximately 8:50 am on February 6, 2015, FLOWERS entered the Popeye's restaurant located at 2721 Naylor Road S.E., Washington, D.C., and brandished a silver and black firearm or imitation thereof and forced three employees to enter the kitchen area. FLOWERS then asked one employee to open the safe, and the employee stated that she did not have access to the safe. FLOWERS then left the restaurant. The attempted robbery of this store affected interstate commerce given the interstate nature of the commercial products sold therein. Additionally, FLOWERS acknowledges as relevant conduct that on nine additional occasions he did unlawfully obstruct, delay, and affect commerce by robbery, in that he did unlawfully obtain property consisting of United States currency from the presence and persons of the employees of businesses operating in interstate and/or foreign commerce, by means of threatened force, violence, and fear of injury, as detailed in the Plea Agreement. *See* Plea Agreement, ECF Docket No. 56, at 2-3.

## STATUTORY PENALTIES

2.  The defendant pled guilty to Counts 6, 9, 17, and 20 of the Superseding Indictment, and Counts 1 and 2 of the two-count information filed in the District of Maryland and transferred to this District, charging Interference with (and Attempted Interference with) Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951 ("Interstate Robbery" or "Hobbs Act"). The Interstate Robbery charge carries a maximum sentence of twenty (20) years of imprisonment, a fine of $250,000 or twice the pecuniary gain or loss of the offense pursuant to 18 U.S.C. § 3571, and a term of supervised release of not more than three (3) years pursuant to

7

18 U.S.C. § 3583(b)(2), mandatory restitution under 18 U.S.C. § 3663A, and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

3. The defendant also pled guilty to Count 12 of the Superseding Indictment, charging Armed Robbery in violation of 22 D.C. Code §§ 2801 and 4502 ("Armed Robbery"). The Armed Robbery charge carries a maximum penalty of thirty (30) years of incarceration, with up to thirty (30) years of initial incarceration, and a fine of up to $75,000, along with a term of supervised release of not more than five (5) years.

4. The defendant also pled guilty to Court 13 of the Superseding Indictment, charging Possession of a Firearm or Imitation Thereof During a Crime of Violence, in violation of 22 D.C. Code § 4504(b) ("PFCOV"). The PFCOV charge carries a maximum penalty of fifteen (15) years of incarceration, with thirteen (13) years of initial incarceration along with a mandatory minimum period of five (5) years of incarceration and a fine of up to $37,500. The defendant may also receive up to three (3) years of supervised release.

5. In addition, the defendant must pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia.

## SENTENCING GUIDELINES

6. For the Interstate Robbery charges, the Federal Sentencing Guidelines calculation embodied in the Presentence Investigation Report ("PSI") places the defendant's base level at 20, with an additional three (3) levels added under U.S.S.G. ¶ 2B3.1(b)(2)(E) for brandishing a dangerous weapon, and an additional five (5) levels added because there were more than five (5) units of Interstate Robbery. This results in a total base offense level of 28. Reducing this by three levels for acceptance of responsibility results in a total offense level of 25, which with a criminal history category of IV results in a Guidelines range of 84-105 months of incarceration

for the Interstate Robbery charges, with an applicable fine of $10,000 to $100,000.  PSI ¶¶ 187, 226.  This range is slightly higher than the estimate in the Plea Agreement [ECF Docket No. 56] at pp. 5-6. [4]

7. For the Armed Robbery and PFCOV charges, under the Superior Court's Voluntary Sentencing Guidelines Manual the defendant has a criminal history category of E, which results in a Superior Court sentencing guidelines range of 84+ months of incarceration for each conviction.[5]  Given the "initial incarceration" applicable to Armed Robbery (30 years or 360 months) and to PFCOV (13 years or 156 months), the resulting Superior Court Guidelines ranges are 84 months to 360 months for the Armed Robbery and 84 months to 156 months for the PFCOV.[6]

---

[4] This range is higher than the estimated range of 63 to 78 months of incarceration in the plea agreement.  *See* Plea Agreement, ECF Docket No. 56, at 6.  In arriving at the Plea Agreement's estimated range, government counsel were unaware the defendant was still under supervision for the 1988 Superior Court conviction listed in the plea agreement [1987-FEL-003596], a fact that results in a higher criminal history score and the corrected and higher guideline range of 84 to 105 months.

[5] Given that the defendant was still under supervision in 1987-FEL-003596, a portion of this felony conviction's sentence falls within the 10-year window of the commission of the instant offenses, and it now counts towards the defendant's criminal history score (see § 2.2.3 of the D.C. Voluntary Sentencing Guidelines Manual 2015 ed. ["D.C. Sentencing Guidelines"]).  Furthermore, since it falls within the 10-year window this felony also "revives" all otherwise lapsed felonies, resulting in a higher criminal history score for the defendant than was originally estimated in the Plea Agreement (*see* §§ 2.2.2 and 2.2.3 of the D.C. Sentencing Guidelines).  For purposes of the DC charges (Counts 12 and 13), the defendant's criminal history score is now 7½.  This is calculated as follows:  1. PSR ¶109:  4/13/1985 Conviction for Grand Larceny – revived, ½ point (*see* 2.2.2); 2. PSR ¶110:  7/17/1986 Conviction for Robbery – revived, 1 point (*see* 2.2.2.); 3. PSR ¶111:  3/30/1987 Conviction for CPWL- 1 point (*see* 2.2.2); 4. PSR ¶112: 6/9/1987 Conviction for Robbery with a Deadly Weapon – revived, 3 points (*see* 2.2.2.); 5. PSR ¶113:  3/1/2001 Conviction for Unlawful Possession of a Firearm – 2 points (*see* 2.2.2.).  This is a total of 7½ criminal history points, which places the defendant in Group E.

[6] As noted previously, local statutory law does not require the imposition of consecutive sentences for each robbery; the D.C. Sentencing Guidelines are themselves voluntary; and the D.C. Sentencing Guidelines contain departure principles permitting deviation from the

## THE PARTIES' PLEA AGREEMENT

8.  In the Plea Agreement, the Parties agreed to a Rule 11(c)(1)(C) sentence of 120 months incarceration (10 years) followed by five years of supervised release. Plea Agreement at 4; PSI ¶ 26. The proposed sentence would leave other elements of the sentence to the discretion of the Court, such as fines and other conditions of supervised release, along with forfeiture and restitution which will be determined by the Court at the time of sentencing.

## SENTENCING RECOMMENDATION

9.  The government urges the Court to accept the agreed-upon sentencing structure of the Rule 11(c)(1)(C) plea. A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007) (citation omitted). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," and are the "starting point and the initial benchmark." *Id*. at 46, 49 (citations and footnote omitted). The district court should next consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *Id*. at 49-50. Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 551 U.S. 338, 346-351 (2007).

10. The Section 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide

---

consecutive and concurrent sentencing rules, as well as other departure principles. *See* §§ 5.2.2(10) and 5.2.3(9) and 5.2 of the *Superior Court Voluntary Sentencing Guidelines Manual (2015 ed.)*

just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (3) the Sentencing Guidelines and related Sentencing Commission policy statements, and (4) the need to avoid unwarranted sentence disparities

11. The parties' agreed-upon sentence of 120 months (10 years) is higher than the federal Guidelines range of 84-105 months. The agreed-upon sentence is only lower than the combined potential federal and local guidelines sentence facing the defendant if the two D.C. Code convictions for Armed Robbery and PFCOV were to be imposed consecutively. The Court, however, retains the discretion on how to impose sentences for those local charges. *See United States v. Cutchin*, 956 F.2d 1216, 1219 (D.C. Cir. 1992) ("Defendants found guilty of violations of the D.C. Code can only be sentenced under the D.C. Code [and] [b]ecause the Guidelines are silent on the issue, how a court is to relate a Guidelines sentence to a non-guidelines sentence is a matter of discretion."), and as already discussed, the local guidelines themselves have departure principles allowing the imposition of concurrent sentences.

12. As discussed above, a total sentence of 120 months of incarceration here will result in a just and fair sentence under the circumstances. This sentence takes into account a variety of factors, including the defendant's acceptance of responsibility across two separate jurisdictions and the saving of additional law enforcement and judicial resources.

## CONCLUSION

Based on the foregoing, and upon the information reflected in the Presentence report, the United States recommends that the Court accept the Rule 11(c)(1)(C) Plea Agreement and impose a total sentence of 10 years of incarceration followed by 5 years of supervised release.

Respectfully Submitted,

CHANNING PHILLIPS
UNITED STATES ATTORNEY


BY: _____/S/_____
MICHAEL J. MARANDO
Assistant United States Attorney,
NY Bar Number 4250395
United States Attorney's Office
555 4th Street, N.W., Rm 4235
Washington, D.C. 20530
(202) 252-7068
michael.marando@usdoj.gov
STEPHEN J. GRIPKEY
Assistant United States Attorney
D.C. Bar No. 445410
555 4th Street, NW, Room 4217
Washington, DC 20530
(202) 252-7237; fax: 202-616-2296
stephen.gripkey@usdoj.gov